UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

In the Matter of Rudolph P. Prisco,

        Appellant,

        1:11-CV-00474 (LEK)

## DECISION AND ORDER

**I.    INTRODUCTION**

On April 26, 2011, Appellant Rudolph P. Prisco ("Appellant"), filed with the Court a Notice of Appeal, *pro se*, from an Order issued by the Honorable Robert E. Littlefield, Jr., United States Bankruptcy Judge on February 23, 2011, converting Appellant's Chapter 13 case to one under Chapter 7. For the following reasons, the February 23, 2011 decision of the Bankruptcy Court is affirmed.

**II.    BACKGROUND**

On August 18, 2007, Appellant was injured while getting out of his vehicle. Debtor's Additional Response to Order to show cause (Dkt No. 3-11) ("Additional Response") at 11-12. The vehicle had been raised by a tow truck during a repossession. Id. According to Appellant, he did not believe that he had a potential claim against anyone due to the circumstances of the case. Id. at 3. However, Appellant received no-fault benefits due to this incident. Dkt. No. 2-1 ("Voluntary Petition") at 27.

On December 12, 2007, Appellant, proceeding *pro se*, filed a Voluntary Petition for bankruptcy under Chapter 13. Id. In the Petition, Appellant disclosed that he was receiving no-fault benefits. Id. In Schedule B of the Petition, which is for personal property, Appellant stated that there were no assets under the categories of "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims" and "[o]ther personal property of any kind not already listed." Id. at 10-11. Also, at a meeting held pursuant to 11 U.S.C. § 341 on January 8, 2008, Appellant responded that he did not have any other potential claims. Add. Resp. at 3.

Appellant asserts that he did not know that he had a potential claim because the injury occurred on his property while he was getting out of his vehicle. Id. at 3-4. Further, Appellant states that the police report implied that he was interfering in a valid repossession. Id. at 1-3, 11-12. He also asserts that at the time of filing he did not know the extent of his injuries and points to his statements at the 341 meeting, asserting that he hoped to go back to work soon. Id. at 3-4. He further argues that the Schedule B categories do not specifically call for disclosure of lawsuits. Debtor's Response to Order to show cause (Dkt. No. 3-8) ("Response") at 2-4. He argues that he did not understand the meaning of "other contingent and unliquidated claims of every nature," outside of the three examples that are given.[1] Id.

According to Appellant, sometime around August 2008, the insurance company tried to stop payment for medical bills and lost wages. Resp. at 4. At this point (on or about September 9,

---

[1] The Court notes that the bankruptcy form – and in particular, category 21 of Schedule B – could be more clear in stating that any potential lawsuit is property of the bankruptcy estate and must be disclosed. See Official Bankr. Form 6, Schedule B (Dec. 2007), *available at* http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/BK_Forms_1207/B_006B_1207f.pdf.

2

2008), Appellant retained an attorney. Id.; Add. Resp. at 17. In order to avoid the lapse of the statute of limitations, a lawsuit was filed in the New York State Supreme Court in Saratoga County on or about August 11, 2010 by Appellant's attorney against a defendant who happened to be a creditor in the bankruptcy proceeding. Add. Resp. at 18. This lawsuit was not disclosed to the trustee or the Bankruptcy Court. Resp. at 6; see also Dkt. No. 3-4.

On August 7, 2008, Debtor's Chapter 13 Plan was confirmed. Dkt. No. 2-2. Payments under the plan were completed on March 20, 2009. Dkt. No. 2-13 at 1. A discharge was never issued by the Bankruptcy Court at the request of Appellant, who wanted to avoid a potential negative impact in a related proceeding by lifting the stay. Dkt. No. 6 ("Appellant's Brief") at 2. In late 2010, opposing counsel in the personal injury lawsuit told Appellant and his attorney that the lawsuit had never been disclosed to the trustee. Dkt. No. 4-1 at 5. On December 13, 2010, Appellant filed an amended Schedule B listing the lawsuit as an additional asset of unknown value under the category of "[o]ther personal property of any kind not already listed." Dkt. No. 3-4. Filed with the amendment, Appellant made the following statement:

> Personal injury claim filed post completion of plan seeking an unstated amount in Saratoga County New York on August 2010 for prepetition [sic] injury. Value of potential asset - is [sic] not readily assessable due to No Fault Insurance Carrier having an apparent first lien against any potential recovery for Lost Wage benefits paid pre and post petition [sic] (Lost Wages were source of Plan Payments) as well as some or all unpaid, reimbursable and future medical bills. Any potential asset is outside the bankruptcy and reporting by debtor is for informational purposes only.

Id. Appellant argues that this statement that the potential asset is outside of bankruptcy meant that due to liens and future medical bills, the recovery would be minimal or nonexistent. Appellant's Br. at 7-8. Further, Appellant argues that the lapse of time between the filing of the Complaint and the Amended Schedules was due to the medical issues of various family members. Id. at 5-7.

3

The Bankruptcy Court issued an Order to show cause as to why the case should not be dismissed pursuant to 11 U.S.C. § 105. Dkt. No. 3-6. Three hearings were held on the issue. See Dkt. Nos. 4-1, 4-2, 4-3. To avoid further prejudice to creditors, the Bankruptcy Court issued an Order on February 23, 2011, converting the Chapter 13 case into one under Chapter 7. Dkt. No. 3-12; see also Dkt. No. 4-1 at 12-13. The Bankruptcy Court based its decision on the following factors: (1) Appellant failed to disclose a pre-petition cause of action; (2) this was the fourth or fifth bankruptcy filing by Appellant; (3) Appellant's attorney indicated in an affidavit that Appellant should have disclosed the lawsuit in November, but it was not disclosed until mid-December; and (4) the language in his disclosure stating the asset was "outside" of bankruptcy. Id.; Dkt. No. 4-3 at 2-3.

### III. STANDARD OF REVIEW

In reviewing the rulings of a bankruptcy court, a district court applies the clearly erroneous standard to a bankruptcy court's conclusions of fact, and reviews *de novo* conclusions of law. Yarinsky v. Saratoga Springs Plastic Surgery, 310 B.R. 493, 498 (N.D.N.Y. 2004) (citing In re Manville Forest Prods. Corp., 209 F.3d 125, 128 (2d Cir. 2000)); In re Petition of Bd. of Dirs. of Hopewell Int'l Inst. Ltd., 275 B.R. 699, 703 (Bankr. S.D.N.Y. 2002); FED. R. BANKR. P. 8013. Mixed questions of law and fact are reviewed *de novo*. Deep v. Danaher, 393 B.R. 51, 54 (N.D.N.Y. 2008) (Kahn, J.) (citing Capital Commc'ns Fed. Credit Union v. Broodrow, 126 F.3d 43, 47 (2d Cir. 1997)). The scope of a court's authority under 11 U.S.C. § 105 is a question of law to be reviewed *de novo*. In re Myrvang, 232 F.3d 1116, 1124 (9th Cir. 2000). However, a bankruptcy court's exercise of its equitable powers under 11 U.S.C. § 105 is reviewed for abuse of discretion.

Deep, 393 B.R. at 54 (citation omitted); In re Globo Comunicacoes E Partcipacoes S.A., 317 B.R. 235, 245 (S.D.N.Y. 2004) (citation omitted).

A court abuses its discretion when "(1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." Zervos v. Verizon New York, Inc., 252 F.3d 163, 169 (2d Cir. 2001). "A bankruptcy court also abuses its discretion if the reviewing court has a definite and firm conviction that the lower court committed a clear error of judgment in the conclusion it reached based on all the appropriate factors." In re Blaise, 219 B.R. 946, 950 (B.A.P. 2d Cir. 1998). "[T]he district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013.

## IV. DISCUSSION

"It is well established that a court is ordinarily obligated to afford special solicitude to *pro se* litigants." Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010). See also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009); Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006); Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990). Submissions of *pro se* litigants are to be construed liberally and interpreted to raise the strongest arguments that they suggest. Triestman, 470 F.3d at 474. "The rationale underlying this rule is that a *pro se* litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection." Tracy, 623 F.3d at 101 (citing Triestman, 470 F.3d at 475).

5

In this case, the Bankruptcy Court, under the authority of 11 U.S.C. § 105(a), converted the Chapter 13 case to one under Chapter 7, *sua sponte*, to avoid prejudice to the creditors for not having access to this potential asset. Courts are given broad discretion under the code; pursuant to 11 U.S.C. § 105(a),

> [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). However, "a bankruptcy court may exercise its equitable powers under § 105(a) 'only as a means to fulfill some specific Code provision.'" In re Roebling 210, LLC, 336 B.R. 172, 176 (Bankr. E.D.N.Y. 2005) (quoting In re Fesco Plastics Corp., 996 F.2d 152, 154 (7th Cir.1993)).

Section 1307 of the Bankruptcy Code provides that a court may convert a Chapter 13 case to Chapter 7 "on a request of a party in interest" for cause, after notice and a hearing.[2] 11 U.S.C. § 1307(c). However, this statute does not limit a court's ability to convert *sua sponte*. 11 U.S.C. §§ 105(a), 1307(c); In re Rosson, 545 F.3d 764, 771 n.8 (9th Cir. 2008).

Section 1307(c) provides a non-exhaustive list of events that would be considered "for cause." 11 U.S.C. § 1307(c); Lucabaugh v. I.R.S., No. 01-2254, 2001 WL 997416, at *3 (E.D. Pa. June 26, 2001). See also 8 Collier on Bankruptcy ¶ 1307.04 (16th ed.) ("Subsection 1307(c), enumerates 11 specific occurrences which constitute sufficient cause for the dismissal or conversion of a chapter 13 case to chapter 7. The grounds enumerated in subsections 1307(c)(1) through (11)

---

[2] Pursuant to § 1307, Appellant was provided notice and a hearing on the issue prior to the conversion.

are not exhaustive."). Although bad faith is not expressly enumerated in the statute, "it is well established that lack of good faith may also be cause for [conversion or] dismissal under § 1307(c)." In re Dixon, No. 08-10510, 2009 WL 151688, at *2 (Bankr. E.D. Pa. Jan. 20, 2009), aff'd, No. 09-1451, 2009 WL 1798819 (E.D. Pa. June 24, 2009) (citing In re Lilley, 91 F.3d 491, 492 (3d Cir. 1996)).

In determining whether a debtor has pursued actions in a case that would warrant conversion or dismissal for lack of good faith, a court must review the "totality of the circumstances." In re Leavitt, 171 F.3d 1219, 1224 (9th Cir. 1999) (citation omitted). A finding of bad faith or a lack of good faith does not require malfeasance. In re Luxford, 368 B.R. 63, 70-71 (Bankr. D. Mont. 2007) (citations omitted). Bad faith can be found when the debtor merely uses "the process in such a way that the underlying policy of securing an orderly and fair adjustment of the relationship between debtor and creditors could not be realized." In re Grieshop, 63 B.R. 657, 663 (N.D. Ind. 1986). "The determination of whether a debtor filed a petition or plan in bad faith so as to justify [conversion or] dismissal for cause is left to the sound discretion of the bankruptcy court." In re Luxford, 368 B.R. at 71 (citations omitted).

Factors that are considered in determining whether a debtor has pursued a Chapter 13 bankruptcy in bad faith are: "(1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Code, or otherwise filed his petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present." Id. at 71 (citing In re Leavitt, 171 F.3d at 1224).

In applying the multi-factored approach outlined above, the Court does not find an abuse of

7

discretion by the Bankruptcy Court in converting the Chapter 13 case to Chapter 7.  Appellant had misrepresented facts in his Petition and Plan by failing to disclose his potential lawsuit, in violation of his express and affirmative duty to disclose all assets, including contingent and unliquidated claims.  In re Coastal Plains, Inc., 179 F.3d 197, 207-08 (5th Cir. 1999).  This duty continues throughout the bankruptcy proceeding, including the debtor's duty to "'disclose all potential causes of action.'"  Id. at 208 (quoting Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n, 932 F. Supp. 859, 867 (E.D. Tex. 1996)).  If the debtor knows all of the facts that give rise to a potential cause of action prior to the bankruptcy filing and no new information is acquired post-filing, then it is a "known" cause of action that must be disclosed.  Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus.), 183 B.R. 812, 821 n.17 (Bankr. N.D. Ill. 1995).  The duty to disclose still arises even if the debtor does not know the legal basis for this potential cause of action.  Id.

Appellant was aware of all of the facts giving rise to the lawsuit prior to filing his bankruptcy petition.  Therefore, the asset should have been disclosed to the trustee.  Even if Appellant were not honestly aware of any cause of action prior to filing, Appellant certainly became aware of a *potential* lawsuit when he retained an attorney in September of 2008.  Appellant retained this attorney one month after the confirmation of the plan, but still before Appellant filed an amended plan in December of 2008.  And, although the lawsuit was filed in August of 2010, the schedules were not amended until December of 2010.  The asset was only disclosed after Appellant and Appellant's personal injury attorney were made aware by opposing counsel that the lawsuit should have been disclosed in bankruptcy and they were moving to dismiss.  Further, the language of the Amended Schedule demonstrates an appearance of intent on behalf of Appellant to avoid disclosure.  Finally, this was not Appellant's first bankruptcy filing.  Rather, it was his fourth or fifth

filing, which included times represented by an attorney. After a thorough examination of the record, the Court concludes that Judge Littlefield's determination was "within" the range of "permissible decisions," Zervos, 252 F.3d at 169, and therefore did not represent an abuse of discretion.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Appellant's Appeal (Dkt. No. 1) is **DENIED** and **DISMISSED**; and it is further,

**ORDERED**, that the February 23, 2011 Order of the Bankruptcy Court converting Appellant's Chapter 13 case to one under Chapter 7 is **AFFIRMED**; and it is further,

**ORDERED**, that the Clerk of the Court serve copies of this Order by regular mail upon the parties to this action.

**IT IS SO ORDERED**.

DATED: September 24, 2012
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge